UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

Plaintiff,

v.

LAVONTE SAMPSON

Defendant.

_____/

Case No. 21-CR-20732

U.S. DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

## OPINION AND ORDER REGARDING: (1) MOTIONS *IN LIMINE* [ECF Nos. 27, 28, and 29]; (2) DEFENDANT'S OBJECTION [ECFNo. 28]

I.      **Introduction**

Lavonte Sampson ("Defendant" or "Sampson") was indicted on December 7, 2021. He faces two charges: Sex Trafficking of Children under 18 U.S.C § 1591(a) ("Count I"), and Production of Child Pornography under 18 U.S.C § 2251(a) ("Count II"). Before the Court are several matters.

First, the Government filed a Motion *in Limine* to Exclude Evidence Pursuant to Federal Rule of Evidence 412 [ECF No. 27] on June 16, 2023. Sampson responded on June 23, 2023, and the Government replied on July 25, 2023. Second, the Government filed an Omnibus Motion *in limine* on June 16, 2023 [ECF No. 28]. Sampson responded on June 23, 2023, and the Government replied on July 25, 2023.

1

Third, Sampson also filed a Motion *in limine* to Preclude Evidence of Other Bad Acts on June 16, 2023 [ECF No. 29]. The Government responded on June 23, 2023, and Sampson replied on July 25, 2023. Fourth, Sampson filed an Objection to the Government's Notice of Intent to Use 414 Evidence [ECF No. 38] on June 26, 2023. The Government responded on July 25, 2023, and Sampson replied on the same day. Finally, Sampson filed a Motion *in limine* to Exclude Expert testimony on October 24, 2023 [ECF No. 51]. The Government responded November 7, 2023, and Sampson replied on November 13, 2023.

Upon review of the briefing and applicable authority, the Court concludes that oral argument will not aid in the resolution of these matters. Accordingly, the Court will resolve the motions on the briefs. *See* E.D. Mich. L.R. 7.1(f)(2).  For the reasons set forth below:

1. ECF No. 27 is **GRANTED;**

2. ECF No. 28 is **GRANTED IN PART** and **TAKEN UNDER ADVISEMENT IN PART**, as stated *infra*:

    a.  Request no. (3) is **GRANTED**;

    b.  Request no. (5) is **GRANTED**;

    c.  Request no. (6) is **TAKEN UNDER ADVISEMENT**;

    d.  Request no. (10) is **GRANTED**.

3. ECF No. 29 is **GRANTED;**

4. ECF No. 51 is **GRANTED IN PART AND DENIED IN PART;**

2

5. The Objection is **MOOT**.

## II. Factual Background

Count One of the indictment alleges that Sampson trafficked MV-1 with knowing or recklessly disregarding the fact that she was under the age of 18. See 18 U.S.C. § 1591(a); ECF No. 1, PageID.1. Count Two alleges that Sampson produced child pornography, in violation of 18 U.S.C. § 2251(a). Id. at PageID.2. Sampson pleaded not guilty to the Indictment and elected to proceed to trial, which is scheduled to commence on January 10, 2024.

At trial, the government intends to introduce evidence of the following. In November 2020, MV-1 was 15 years old and staying with a friend in Detroit. MV1 met Sampson, who was 36 years old, through a friend, and they began talking on Facebook. Sampson recruited MV-1 to engage in commercial sex work. Sampson created and posted commercial sex ads for MV-1 using photographs she sent him and photographs that he took. He also recorded himself and MV-1 having sex. Sampson then took MV-1 to the MNM Motel in Detroit, where she engaged in commercial sex acts with others at his direction. Sampson arranged commercial sex dates for MV-1, set the pricing, required her to use a condom, and instructed her how to act with dates. He waited in the car while she met with the dates and collected all of the proceeds afterwards. ECF No. 28, PageID.111-112.

3

An adult woman who was allegedly conducting her own commercial sex dates at the motel, T.P., assisted Sampson in facilitating MV1's dates and ensuring that MV-1 was acting appropriately. On November 30, 2020, Sampson allegedly arranged a commercial sex date between MV-1 and an undercover agent ("UC"). In the process of arranging the date with the UC, Sampson allegedly sent the UC the video recording of him having sex with MV-1. When the UC arrived at the hotel room, he encountered MV-1 and T.P. While MV-1 went to purchase condoms from the lobby, the UC and T.P. allegedly agreed on conducting a "duo date" in exchange for $200. When MV-1 returned to the room, federal agents intervened and recovered MV-1. *Id.*

Facebook records purportedly reflect that on November 29, 2020, the day before the UC operation, Sampson sent T.P. photographs of MV-1, including one of her in her underwear bent over on a bed. *Id*.

### III.   Legal Standard

The purpose of motions *in limine* is to obtain advance rulings on the admissibility of evidence so that trial preparation is facilitated, distractions during trial are reduced, legal issues can be deliberated more "serenely," and the risk of exposure of the jury to inadmissible evidence can be minimized. *United States v. Hamilton*, 574 F. Supp. 3d 461, 466 (E.D. Mich. 2021). District courts retain a high level of discretion in granting, denying, or later modifying motions *in limine*. See

4

*Branham v. Thomas Cooley Law Sch*., 689 F.3d 558, 560 (6th Cir. 2012) (reviewing a district court's order on a motion in limine for abuse of discretion). A grant or denial of a motion in limine does not foreclose the possibility that it may be changed later. *Id*. at 562. ("Even if nothing unexpected happens at trial, the district judge is free... to alter a previous in limine ruling."). This discretion runs concurrent with the high standard that must be met to exclude evidence.

The Court is charged with determining all preliminary questions of admissibility under the Federal Rules of Evidence ("FRE"). See Fed. R. Evid. 104(a). FRE 402 states that all relevant evidence is admissible unless any of the following provides otherwise: the Constitution, a federal statute, another rule of evidence or rule prescribed by the Supreme Court. See Fed. R. Evid. 402. Irrelevant evidence is inadmissible. *Id*.

The test for relevant evidence is stated under FRE 401, which provides that evidence is relevant if it "has the tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining that action." Fed. R. Evid. 401. The standard for relevancy is "extremely liberal." *Dortch v. Fowler*, 588 F.3d 396, 400 (6th Cir. 2009). "[E]ven if a district court believes the evidence is insufficient to prove the ultimate point for which it is offered, it may not exclude the evidence if it has the slightest probative [value]." *United States v.*

*Whittington*, 455 F.3d 736, 738–39 (6th Cir. 2006) (alteration in original) (quoting

*DXS, Inc. v. Siemens Med. Sys., Inc*., 100 F.3d 462, 475 (6th Cir. 1996)).

However, relevant evidence may also be inadmissible if its "probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

## IV.    Discussion

### A. [ECF No. 27] the Government's Motion in Limine to Exclude Evidence Pursuant to Federal Rule of Evidence 412

The Government moves *in limine* to exclude evidence "MV-1's sexual activity unrelated to Sampson that occurred before, during, or after the period alleged in the Indictment." ECF No. 27, PageID.99. Sampson does not challenge this request; instead, he intends to question MV-1 about her "conduct in this case as it pertains to the elements of Count 1 and 2." ECF No. 36, PageID.214.

In support of Count 2 – Production of Child Pornography, the government intends to introduce a video that Sampson allegedly sent to an undercover agent depicting him and MV-1 having sex. ECF No. 44, PageID.247. MV-1 previously stated in a forensic interview that she did not have sex with Sampson. *Id*. The Government "does not seek to prohibit Sampson from questioning MV-1 about the commercial sex acts in which she engaged at Sampson's direction during the time period alleged in the Indictment" as such a line of questioning would be relevant to

6

Count 1 of the indictment.  ECF No. 44, PageID.247. And the Government "does not" seek to "prohibit cross-examining MV-1 about her prior statement that she did not have sex with Sampson." *Id*. Accordingly, the Government does not dispute that Sampson may question MV-1 about her "conduct in this case as it pertains to the elements of Count 1 and 2."

The dispute arises in connection with Sampson's intention to question MV-1 about her sexual "predisposition involving him." ECF No. 36, PageID.214. He maintains that this evidence is relevant "to rebut the government's case in chief pertaining to elements of the offense in Count I" and that it is admissible under Fed. R. Evid. 412(b)(1)(B)'s consent exception. *Id*. The Government replies, asserting that evidence pertaining to MV-1's sexual predisposition involving him "is entirely irrelevant to any of [the] elements" of Count 1 and is barred by Fed. R. Evid. 412 ("Rule 412"). ECF No. 44, PageID.247-48.

### 1. Relevance

As to Count 1, 18 U.S.C. § 1591(a)(1), entitled "Sex trafficking of children or by force, fraud, or coercion", the Government must prove that: (1) Sampson knowingly recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, or solicited by any means MV-1; (2) while knowing or recklessly disregarding the fact that force, fraud, or coercion would be used to cause MV-1 to engage in a commercial sex act, or while knowing or recklessly

disregarding the fact that MV-1 had not attained the age of 18 years and would be caused to engage in a commercial sex act; and the Government must prove that (3) the offense affected interstate or foreign commerce. 18 U.S.C. § 1591(a)(1); *United States v. Willoughby*, 742 F.3d 229, 241 (6th Cir. 2014) (abrogated on other grounds by *Johnson v. United States*, 576 U.S. 591, 135 S. Ct. 2551, 192 L. Ed. 2d 569 (2015)).

Whether MV-1 may or may not have exhibited any sexual behavior towards Sampson says nothing about whether he recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, or solicited MV-1 while knowing that she had not attained the age of 18 and would be caused to engage in a commercial sex act. Under 18 U.S.C. § 1591(a)(1), these elements, in addition to the element pertaining to interstate commerce, are all the Government is required to prove. See *United States v. Mack*, 808 F.3d 1074, 1081 (6th Cir. 2015) (noting that "[w]ith respect to [a defendant's] sex trafficking of a minor (MS) conviction, the government was *not* required to prove force or coercion at all. . . Instead, the government need only prove that defendant knew, or acted in reckless disregard of the fact, that MS was less than eighteen years old and would be caused to engage in commercial sex acts") (emphasis added); See also *Id.* (quoting *United States v. Elbert*, 561 F.3d 771, 777 (8th Cir.2009) ("'Because the victims were minors and

could not legally consent, the government did not need to prove the elements of fraud, force, or coercion, which are required for adult victims.'")).

MV-1's sexual predisposition towards Sampson is of no consequence in this criminal case where consent is not a defense and injury is not at issue. As this Court stated in *United States v. Gardner*, where the defendant was charged with the same crimes as Sampson and sought to introduce evidence of the minor victim's prior sexual history, "MV-1's prior sexual history has no bearing on Defendant's intent [or knowledge] at the time of the alleged offense." *United States v. Gardner*, 2016 WL 5404207, at *3 (E.D. Mich. 2016) (Drain, J.). The Court finds that the testimony Sampson seeks to illicit from MV-1 is not relevant under Fed. R. Evid. 401.

## 2. Rule 412

Rule 412 provides that the following evidence is not admissible in a civil or criminal proceeding involving alleged sexual misconduct: (1) evidence offered to prove that a victim engaged in other sexual behavior; or (2) evidence offered to prove a victim's sexual predisposition. Rule 412 (b)(1)(A)-(C) enumerates three exceptions where the "court may admit the following evidence in a criminal case":

> (A) evidence of specific instances of a victim's sexual behavior, if offered to prove that someone other than the defendant was the source of semen, injury, or other physical evidence;

> (B) evidence of specific instances of a victim's sexual behavior with respect to the person accused of the sexual misconduct, if offered by the defendant to prove consent or if offered by the prosecutor; and

9

> > (C) evidence whose exclusion would violate the defendant's
> > constitutional rights.

Sampson relies on the exception listed in Rule 412(b)(1)(B) and the Sixth Circuit has affirmed that the "consent" exception on which he relies refers to "specific instances of a victim's sexual behavior with respect to the person accused...." *Mack*, 808 F.3d at 1084 (quoting Fed. R. Evid. 412(b)(1)(B) (internal quotation omitted)). Regardless of Rule 412(b)(1)(B)'s applicability, however, the testimony Sampsons seeks to illicit from MV-1 may properly be excluded because "irrelevant evidence is inadmissible." Fed. R. Evid. 402.

Moreover, the probative value of such evidence is substantially outweighed by the danger of unfair prejudice or confusing the issues. See Fed. R. Evid. 403. As stated *supra*, in this case where injury is not at issue and consent is no defense to Sampson's alleged acts of sex trafficking a minor, evidence of MV-1's sexual predisposition towards him is of no consequence and therefore holds no probative value. On the other hand, such evidence has the great potential to confuse the jury by influencing them to believe that consent serves as a defense to Sampson's alleged acts, or that they mitigate his alleged crimes. Introducing evidence to show that MV-1 exhibited sexual behavior towards Sampson would serve no purpose in this trial other than to enforce the narrative that MV-1 consented to her own alleged sex trafficking. This line of reasoning could influence the jury to render a verdict on an

improper basis. As such, it unduly prejudicial and the Court will exclude it from evidence.

Next, Sampson maintains that "restricting his ability to cross-examine would violate his Sixth Amendment constitutional right to confrontation." ECF No. 36, PageID.214. This argument is unspecific and is—in the circumstances of this case—without merit. It is well established that a trial court has discretion to reasonably limit the scope of cross-examination without offending the Confrontation Clause. See *Boggs v. Collins*, 226 F.3d 728, 736 (6th Cir. 2000) (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). This includes discretion to impose limits based on concerns about "harassment, prejudice, confusion of the issues, witness safety, or interrogation that is repetitive or only marginally relevant." See *id*.; *King v. Trippett*, 192 F.3d 517, 524 (6th Cir.1999) (citing *Van Arsdall*, 475 U.S. at 679, 106 S.Ct. 1431). In this way, the Confrontation Clause "guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985) (emphasis in original).

Precluding Sampson from eliciting testimony from MV-1 that is irrelevant unduly prejudicial, and not pertinent to impeachment of a witness does not violate the Confrontation Clause. See *King*, 192 F.3d at 517 ("trial judges retain wide

11

latitude insofar as the confrontation clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, . . . prejudice [and] confusion of the issues"). Further, the government concedes that "if MV-1 testifies inconsistently with her prior statement that she did not have sex with Sampson, the defense could urge the jury to consider the inconsistency in evaluating MV-1's credibility." ECF No. 44, PageID.248. Other than for proper impeachment purposes, Sampson is precluded from eliciting any testimony from MV-1 about her sexual predisposition towards him. If such an opportunity for impeachment arises counsel must call for a side bar to address the issue with the Court.

Finally, Sampson argues that such evidence is admissible under Rule 412(A) "because the sentencing guidelines that would apply in this case if Mr. Sampson were to be convicted provide enhancement in the base offense level for injury to MV-1." ECF No. 36, PageID.215 (citing U.S.S.G. § 2G2.1(b)(4) and 2G2.2(b)(4)). While injury is not an element of the Government's proofs, Sampson says that "the production of the video of Mr. Sampson [having sex] with MV-1 could be used to support such enhancements, even if his potential sentence is not argued at trial." *Id*. Sampson's argument is without merit because the proofs presented at trial are separate and distinct from any factors or evidence the Court would consider at sentencing, if Sampson is convicted. Further, as the Government points out, "Sampson cites no authority for his claim that if evidence may support an

enhancement to a defendant's offense level under the United States Sentencing Guidelines, then the evidence is admissible at trial" under Rule 412(A). ECF No. 44, PageID.249. Accordingly, the Court rejects Sampson's argument and the evidence pertaining to MV-1's sexual predisposition towards him is inadmissible on all grounds not including the narrow and specific purpose of proper and permissible impeachment.

As a point of clarification, both parties are prohibited from making any arguments pertaining to consent, as the Court has found that any evidence pertaining to consent is irrelevant and therefore not admissible.

### B. [ECF No. 28] the Government's Omnibus Motion *in limine*

The Government moves *in limine* on numerous bases. Namely, they seek to:

1. prohibit reference to potential state criminal charges and any potential criminal penalties;

2. prohibit the admission of evidence or argument relating to jury nullification;

3.  prohibit the use of one's witnesses statement to impeach another testifying witness;

4. prohibit the declaration that a witness is an expert;

5. prohibit the argument that the victim consented to commercial sex;

6. allow the government to put on a rebuttal case;

7. permit the use of demonstrative evidence;

8.  permit MV-1 to be referred to by only her first name;

9.  allow MV-1 a support person in the courtroom during her testimony; and

10. prohibit the use of inflammatory terms such as 'child prostitute' in reference to MV-1; and to sequester witnesses.

See ECF No. 28. In addition to seeking the exclusion of the evidence set forth below, the government also requests that the defense be prohibited from referring to these matters during *voir dire*, opening statement, closing argument, and the examination of witnesses. ECF No. 28, PageID.113.

Sampson does not dispute most of these requests. The dispute arises, however, in connection with four of the Government's requests: (3) to prohibit the use of one witness's statement to impeach another testifying witness, (5) to prohibit any argument that the victim consented to commercial sex, (6) to allow the government to present a rebuttal case, and (10) to prohibit the use of inflammatory terms with respect to MV-1. ECF No. 37.

The requests that are not in dispute are **GRANTED**. With respect to request no. (7), however, Sampson will be allowed the opportunity to object to any demonstrative exhibit before publication to the jury. The Court will address each challenged requests in turn.

In response to no. (3) (the Government's request to prohibit the use of one's witnesses statement to impeach another testifying witness), Sampson states that he

14

intends to "impeach witnesses with their own prior inconsistent statements whenever such prior statements rebut the witness's sworn testimony at trial." ECF No. 37, PageID.218. Sampson believes that the government "is attempting to prevent him from using agents' reports of a witness' prior statements to impeach that witness' testimony on the stand." *Id*. He argues that "this is impermissible under the Rules of Evidence. A prior statement is NOT hearsay if it falls within one of the enumerated exceptions to the hearsay rule." *Id*. (citing Fed. R. Evid. 613).

The government says it requests a prohibition on the defense from impeaching witnesses using other people's reports and that this request "is not an attempt to prevent Sampson from impeaching a witness with his or her prior statements as reported in a law enforcement report."  ECF No. 43, PageID.241. The Government says its request was meant to address the following example.

> If Sampson seeks to impeach a testifying witness with the witness's prior statements that a law enforcement officer documented in a report, and the witness denies making the prior statement, Sampson cannot then use that report itself to impeach the witness. Sampson would, for example, be required to call the law enforcement officer who drafted the report to ask about the prior statement of the testifying witness that the officer documented.

*Id*. Request no. (3) is **GRANTED**. If a witness testifies inconsistently with a statement that he/she denies having made to an officer that statement may not be used to impeach the witness. See Fed. R. Evid. 613(b) ("Extrinsic evidence of a witness's prior inconsistent statement is admissible only if the witness is given an

opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it, or if justice so requires"); and *United States v. Valentine*, 70 F. App'x 314, 323 (6th Cir. 2003) ("The district court was correct in concluding that it would be improper to impeach either Butler or Phillips with a third-party [Police Officer's] rendition of his statements [authored in a police report] without Butler or Phillips adopting the statement as his own.") (abrogated on other grounds).

In response to no. (5) (the Government's request that the Court prohibit any argument that the victim consented to commercial sex acts), Sampson argues that "as MV-1 has made assertions regarding her involvement with Mr. Sampson, Mr. Sampson should be allowed to confront her regarding those assertions and the context in which they pertain." ECF No. 37, PageID.219. Consistent with the Court's ruling on the Government's Motion *in Limine* to Exclude Evidence Pursuant to Federal Rule of Evidence 412 [ECF No. 27], and for the reasons stated *supra*, neither party may argue that MV-1 was in any way capable of consenting to commercial sex acts. However, Sampson may make arguments necessary to properly impeach any testimony MV-1 gives, which presumably will not include testimony pertaining to consent. Request No. 5 is **GRANTED**. Again, counsel must call for side bar to address impeachment issues.

In response to (6) (the Government's request to allow the government to present a rebuttal case), Sampson avers that the case should be "decided by the jury once the government puts forth its proofs in its case in chief as Mr. Sampson has no obligation to put on a defense at all." ECF No. 37, PageID.219. A district court has broad discretion to determine the scope of rebuttal in admitting evidence, and therefore, it can limit the scope of rebuttal as necessary. See *United States v. Caraway*, 411 F. 3d 679, 683 (6th Cir. 2005).

The Court reserves ruling on request no. (6), which will be decided after the presentation of a defense by Sampson.

In response to no. (10) (the Government's request to prohibit the use of inflammatory terms with respect to MV-1 and to permit the sequestration of witnesses), Sampson does not object to the sequestration of witness, instead he argues that,

> [t]he government has filed a motion to allow 404(b) evidence of Mr. Sampson's prior conviction into evidence during the presentation of its case in chief. The prior conviction the government seeks to use involves the transportation of a prostitute and receiving the proceeds of a prostitute. Should the government be allowed to admit this evidence to the jury, Mr. Sampson should be allowed to explore the relevance of this evidence in this federal prosecution, including the entirety of his alleged involvement with MV-1 as pertaining to her role in prostitution in this case.

ECF No. 37, PageID.219.

The government seeks to admit, pursuant to Federal Rule of Evidence 404(b), evidence underlying Sampson's recent convictions for Transporting a Person for Purposes of Prostitution, based on his conduct with adult victims, and Accepting Earnings of a Prostitute, based on his conduct with adult victims and a minor victim. ECF No. 35, PageID.197-201. The Government says that evidence includes Sampson posting and agreeing to post commercial sex ads for victims and transporting them for purposes of them engaging in commercial sex.

The Government does not dispute that Sampson is permitted to challenge the relevance of this evidence, instead, the Government avers that "the fact that [Sampson] was convicted of state charges that use the term 'prostitution' does not open the door for him to refer to MV-1 as a 'child prostitute' or to refer to her involvement in commercial sex as 'prostitution.'"  ECF No. 43, PageID.243.

Since § 1591 does not refer to the child victims of sex trafficking as "prostitutes" or "child prostitutes", Sampson may not do so at trial.  Request No. (10) is **GRANTED**.

The Government's Omnibus Motion in Limine is **GRANTED IN PART** and **TAKEN UNDER ADVISEMENT IN PART**.

Case 2:21-cr-20732-GAD-KGA   ECF No. 60, PageID.903   Filed 12/19/23   Page 19 of 48

### C. [ECF No. 29] Motion in limine to Preclude Evidence of Other Bad Acts

Sampson moves *in limine* to preclude witness testimony regarding his prior arrests and/or convictions. Sampson pled no contest to two counts of prostitution/transporting person and one count of prostitution/accepting earnings in an Oakland County state court. ECF No. 29, PageID.132. In addition to the evidence of the charged offenses, Sampson says the government seeks to elicit evidence through testimony at trial from Tiffany Perkins, investigating agents, and potentially others pertaining to the investigation of Sampson's past involvement with and/or convictions involving prostitution. ECF No. 29, PageID.132. Sampson avers that this evidence is inadmissible under Fed. R. Evid. 404(b), that it is not relevant under Rule 401, and that the "probative value of the government's proposed evidence is substantially outweighed by the danger of unfair prejudice." ECF No. 29, PageID.132.

Under Rule 404(b)(1) "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, such "other acts" evidence may "be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). To introduce other acts evidence, a

19

prosecutor must satisfy Rule 404(b)(3)(A)-(C)'s notice requirements. Specifically, the prosecutor must:

> (A) provide reasonable notice of any such evidence that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it;
>
> (B) articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose; and
>
> (C) do so in writing before trial — or in any form during trial if the court, for good cause, excuses lack of pretrial notice.

*Id*.

Sampson contends that the Government's notice did not satisfy subsection (A) because he requested notice on August 5, 2022, and such notice was not provided until June 15, 2023. ECF No. 29, PageID.133. Motions *in limine* were initially due on June 13, 2023, the parties submitted a stipulation/proposed order to extend the date to June 16, 2023. ECF No. 26, PageID.92. The Court accepted the stipulation. On June 27, 2023, the Court granted Sampson's Motion to Adjourn trial from July 12, 2023, to September 18, 2023. See ECF No. 39. Trial is now scheduled to commence on January 10, 2024.

"Rule 404(b)'s notice standard is flexible because 'what constitutes a reasonable disclosure will depend largely on the circumstances of each case.' " *United States v. Bell*, No. 17-CR-20183, 2020 WL 4726935, at *3 (E.D. Mich. Aug. 14, 2020 (quoting *United States v. White*, 816 F.3d 976, 984 (8th Cir. 2016)). The

One week is frequently deemed reasonable notice for Rule 404(b) purposes, though some judges may require more time. See e.g., *United States v. Paul*, 57 F. App'x 597, 607 (6th Cir. 2003). Given that Sampson's issue with the Government's notice pertains solely to its timing, and the Government furnished the notice well ahead of the trial date as currently scheduled, the Court finds that he has had time to prepare and the notice is adequate.

In its notice, the Government indicates that it intends to introduce evidence at trial demonstrating "that in the months leading up to the alleged conduct in the instant case (June 1, 2020, to October 1, 2020), the defendant was involved in the sex trafficking of others (including a minor), including posting commercial sex ads, providing transportation, and collecting a portion of the proceeds." ECF No. 29-2, PageID.144. It further states that evidence of defendant conduct if "offered to prove the following proper purposes." *Id*.

1. ***The defendant's modus operandi, plan, and/or scheme***: The defendant used the same tactics with the victims in the Oakland County case that he did with MV-1 in the instant case. The evidence shows there were numerous similarities, such as: (1) using sexually suggestive photos of the minor to create and post commercial sex ads, (2) communicating with commercial sex buyers to arrange dates, and (3) renting hotel rooms for the purpose of providing a location for the commercial sex acts to occur.

2. ***The defendant's intent, knowledge, and absence of mistake***: The evidence related to the defendant's conduct in the Oakland County case is admissible to prove his knowledge of how to post commercial sex ads and arrange commercial sex dates. His other acts with the victims in the Oakland County case help prove that in

> this case, he knowingly recruited and advertised MV-1 knowing
> that she would engage in commercial sex acts. The evidence will
> show that Sampson was not a victim of circumstances or that he
> was merely doing as instructed by other persons without any of the
> requisite knowledge.

*Id*. (Emphasis added).

District courts employ a three-part test to determine the admissibility of Rule 404(b)(2) evidence. See *United States v. Mack*, 729 F.3d 594, 601 (6th Cir. 2013). First, a court determines whether there is sufficient evidence that the crime, wrong, or other act took place. *Id*. Second, it decides whether evidence of that conduct is offered for a proper purpose, *i.e.*, "whether the evidence is probative of a material issue other than character." *Id*. Third, the court considers whether any risk of unfair prejudice substantially outweighs the evidence's probative value. *Id*.

As detailed *supra*, the Court will employ the three-part test to determine whether the prior acts evidence is admissible under Rule 404(b)(2).

## 1. Whether Sufficient Evidence Exists that the Prior Acts Occurred

The Court first considers whether there is sufficient evidence of the alleged other bad acts. Sampson does not advance an argument on this point, the Government, however, avers that, "in pleading guilty [or nolo contendere] to his Oakland County charges, he stipulated to the facts, which were authored in a

[Madison Heights Police Department] report." ECF No. 35, PageID.205. Despite filing a reply brief, Sampson fails to dispute the purported stipulation.

The Government need not prove that the other acts occurred by a preponderance of the evidence. *Huddleston v. United States*, 485 U.S. 681, 689 (1988). A defendant's stipulation to the occurrence of prior bad act is sufficient evidence to find that it occurred. See *United States v. Love*, 254 F. App'x 511, 514 (6th Cir. 2007), aff'd, 550 F. App'x 286 (6th Cir. 2014) ("Given that the prior bad act introduced in this case involved a stipulated-to conviction, there is no dispute that the act occurred.").

Additionally, Sampson says that "the government seeks to elicit evidence through testimony at trial from Tiffany Perkins, investigating agents, and potentially others pertaining to the investigation of Lavonte Sampson's past involvement with and/or convictions involving prostitution." ECF No. 29, PageID.132. "Evidence is sufficient if 'the jury can reasonably conclude that the act occurred and that the defendant was the actor.'" *United States v. Bell*, No. CR 17-20183, 2022 WL 1060737, at *3 (E.D. Mich. Apr. 8, 2022) (quoting *Huddleston v. United States*, 485 U.S. 681, 689 (1988)). And "'the testimony of a single witness is sufficient for a reasonable jury to conclude that the defendant committed the prior acts, even where the witness is less than completely reliable.'" *Id*. (quoting *United States v. Johnson*, 458 F. App'x 464, 470 (6th Cir. 2012)).

Accordingly, the first prong of the three-part inquiry is satisfied.

### 2. Whether the "other act" is Offered for a Proper Purpose Under the "other acts" Rule

Since Sampson is not asserting a defense based on mistake or accident, the evidence is not admissible for purposes of showing absence of mistake. See *United States v. Bell*, 516 F.3d 432, 442 (6th Cir. 2008) ("for other acts evidence to be admissible for the purpose of showing absence of mistake or accident, the defendant must assert a defense based on some type of mistake or accident."). Plan, scheme (and the related concept of modus operandi), as well as knowledge are material because they go to the elements of Count 1. The Court will discuss "modus operandi" first and address "knowledge" second.

### a. Modus Operandi

Other acts evidence is probative of modus operandi when all of the similarities between the other acts and the current crime "in combination, present an unusual and distinctive pattern constituting a 'signature.'" *United States v. Mack*, 258 F.3d 548, 554 (6th Cir. 2001) (emphasis added). "Relatedly, prior sex trafficking offenses are probative of a present intent to commit (or knowledge of) sex trafficking when the prior bad acts 'were part of the same scheme or involved a similar modus operandi as the present offense.'" *United States v. Bell*, No. CR 17-20183, 2022 WL 1060737, at *4 (E.D. Mich. Apr. 8, 2022) (*Bell*, 516 F.3d at 443). Although the prior acts and the charged crime do not need to be "identical in every detail," the two

crimes must have "sufficient distinctive similarity [so as to] create a pattern" such that the prior acts evidence are probative. *United States v. Perry*, 438 F.3d 642, 648 (6th Cir. 2006). Under Rule 404(b), the Court may admit "two crimes of sufficient distinctive similarity [that] can create a pattern or modus operandi." *United States v. Perry*, 438 F.3d 642, 648 (6th Cir. 2006).

With respect to the Government's purpose no. 1, Sampson refers the evidence stated in the notice as "pimping evidence." ECF No. 29, PageID.135. He argues that "there is no permissible purpose for the introduction of the pimping evidence" because it does not "demonstrate Sampson's modus operandi, plan, and/scheme" *Id*. There is a single minor victim in this case, which Sampsons says does not involve a "broader sex-trafficking operation." As such, Sampson also argues that the evidence is not relevant and not so unique as to establish a "modus operandi", "as the similarities between the other acts and the charges [he] faces do not 'present an unusual and distinctive pattern constituting a "signature." *Id*. (citing *United States v. Mack*, 238 F.3d 548, 554 (6th Cir. 2001)).

In response, the Government avers that Sampson's two purported crimes had the following similarities, occurring only two months apart: (1) Sampson had sexually explicit photographs and videos of women, including a minor, on his phone, some of which appeared in commercial sex ads, (2) Sampson posted commercial sex ads for women, (3) Sampson used Facebook to communicate with a minor about

25

commercial sex work, (4) he communicated with potential sex buyers to arrange commercial sex dates, including at hotels, (5) the minor victim in the Oakland County case had a tattoo of the word "Queen," and  in this case "Sampson tattooed the word 'Queen' on MV-1's lower back; and (6) Sampson communicated with C.P. about sex trafficking activity. ECF No. 35, PageID.206. The government also alleges that Sampson's no contest pleas in the state case were "based on his conduct with the 15-year-old and/or P.H. and/or S.P", two adult victims in that case. ECF No. 35, PageID.200.

Sampson points out two distinctions between this case and the Oakland County case: (1) that he did not tattoo the word "Queen" on MV-1 in the Oakland county case, in that case MV-1's tattoo was "indicative of the fact that she had a pimp" ; (2) in the Oakland County case, MV-1's tattoo also had a crown, while, in this case MV-1's "Queen" tattoo did not have a crown. ECF No. 46, PageID.257. Sampson further asserts that the "Queen" tattoo is prevalent among commercial sex workers[1], the posting of commercial sex ads is common, as is possession of sexually

---

[1] Specifically, Sampson claims that "Queen" tattoos "are prevalent among commercial sex workers. Indeed, a Madison Heights police report produced by the government explains as much. And a quick Google search reveals the same." ECF No. 46, PageID.257. However, the police report is not attached to the pleadings and the Court was not able to confirm as much with a quick Google search. Yet, the Government's response brief does not specifically assert the "Queen" tattoos are in any way unique to Sampson's alleged scheme. Thus, the Court will accept Sampson's assertion that the tattoos as non-distinctive.

explicit content of women and minors and arranging dates with potential buyers. ECF No. 46, PageID.256. Lastly, Sampson argues that "communications with 'C.P.' are insufficient to establish a signature. This evidence is also of questionable relevance because C.P. is not on trial and Mr. Sampson is not charged with a conspiracy." ECF No. 46, PageID.258.

Sampson's conduct is standard in sex trafficking cases, the prior acts evidence—occurring only two months before the instant case was filed—appear to suggest that he acted in this case as part of a continuous methodology aimed at advertising women—including minors—for commercial sex and facilitating dates at hotels. Though he did not create the "Queen" tattoo on the victim in the Oakland County case, he allegedly tattooed MV-1, worked with C.P., facilitated dates at hotels, and communicated with the minor in this case via Facebook as a continuation of his previous methodology. Yet, the Court cannot say that these acts, in combination, present an "unusual and distinctive pattern" constituting a "common scheme" or "signature" sufficient for purposes of admission under Rule 404(b). *United States v. Mack*, 258 F.3d 548, 554 (6th Cir. 2001).

In *United States v. Bell*, also known as the Victory Inn sex trafficking case, Judge Goldsmith found that the prior acts evidence *did not* demonstrate the defendant's modus operandi. *Bell*, 2022 WL 1060737, at *5. (Emphasis added). In

its reasoning discussing the similarities between the two Victory Inn and Pontiac sex trafficking operations, the Court stated that,

> [t]he fact that a pimp used narcotics and violence to control the women in his employ is hardly distinctive. Nor is the fact that a pimp did not let the women in his employ keep the money from their sex dates or buy drugs from other dealers. The only arguably unusual . . . characteristic of the two operations is likely Bell's use of female love interests (as well as others, at the Victory Inn) to supervise the operations, so that Bell could physically distance himself from the operations to more easily avoid detection by law enforcement. But this single trait is insufficient to establish a distinctive pattern.

*Id*. The court also found that evidence of the Pontiac operation would only be probative if the jury were permitted to infer that, because Bell has trafficked women before, he must have done so again in the Victory Inn case. *Id*. But, the court noted, "this is the 'kind of propensity reasoning which Rule 404(b) prohibits the jury from using in assessing the probative value of [the defendant's] prior [bad acts] ... and prevents the judge from considering when engaging in the Rule 403 balancing process.'" *Id*. (quoting *Bell*, 516 F.3d at 445–446).

Similarly, here Sampson avers that the Queen tattoos, commercial sex ads, possession of sexually explicit content of women and minors, arranging of dates with potential buyers at hotels, and use of Facebook for communication about sex work are all non-distinctive in relation to other commercial sex operations. The only distinctive traits of Sampson's alleged methodology include his communication with C.P. As the court found in *Bell*, however, this single trait is insufficient to establish

a distinctive pattern. Even when viewed in combination with the non-distinctive traits, however, the alleged operation does not amount to distinctive pattern such that it constitutes Sampson's signature or a "common plan" consistent with the Sixth Circuit's interpretation of Rule 404(b).

To be sure, the Sixth Circuit noted, in a case where the defendant had been convicted of trafficking a 16-year-old girl under section 1591(a)(1), that the Government had no basis for defending the trial court's evidentiary ruling pertaining to Rule 404(b). *United States v. Willoughby*, 742 F.3d 229, 236 (6th Cir. 2014) (abrogated on other grounds). There, the district court admitted prior bad act evidence of pimping, specifically, the prior bad act evidence was introduced through the testimony of a woman who the defendant had previously pimped, he repeatedly asked her to be a prostitute for him, gave her drugs, gave her condoms, and counted the number of condoms she had left over when she returned after work. *Id*. at 237. Though the defendant had employed many of these same methods in his efforts to pimp the victim *Willoughby*, the Court reached the following conclusion, "saying that a pimp counts condoms is like saying that a bank robber uses a gun. A methodology must be more distinctive than this to count as a 'common plan' for purposes of the rule. *Id*.

Accordingly, the Court stated that there was no basis for the Government to defend the district court's admission of the evidence to show a "continuing pattern

of illegal activity" or "a common plan or scheme to commit the charged crime." *Id*.[2]

However, the Sixth Circuit ultimately affirmed the district court's decision because

the evidence showed that defendant had knowledge of the area where the prostitution

took place, and although the Court viewed  the evidence as more prejudicial than

probative, this did not constitute plain error. *Id*. at 238.

As noted *supra*, the evidence at issue here similarly lacks distinctiveness.

Therefore, the prior bad act evidence it is not probative of Sampson's common plan

or scheme as defined under Rule 404(b). As such, it fails under the second prong of

the three-step inquiry and is thus inadmissible for the Government's purpose no. 1.

### b.  Knowledge

Regarding purpose no. 2, knowledge is an element of the offense, and

Sampson does not contest that it is relevant to show knowledge. Rather, he contends

that the evidence is unfairly prejudicial in relation to its probative value. Thus, with

respect to purpose no. 2, the court will proceed to the third step of the three-step

inquiry.

### 3.  Whether the Probative Value of the Evidence is Substantially Outweighed by the Risk of Unfair Prejudice

Unfair evidence "'refers to evidence which tends to suggest decision on an

improper basis.'" *Bell*, 2022 WL 1060737, at *5 (quoting *United States v. Schrock*,

---

[2] The Court reached these conclusions even though the Government did not aver to
defend the appeal on those grounds.

855 F.2d 327, 335 (6th Cir. 1988) (punctuation modified). "The quintessential example of an improper basis in the Rule 404 context is "'generalizing a defendant's earlier bad act into bad character and taking that as raising the odds that he did the latter bad act now charged (or, worse, as calling for preventive conviction even if he should happen to be innocent momentarily).'"" *Id*. (quoting *Bell*, 516 F.3d at 445).

In balancing unfair prejudice against probative value courts must consider the availability of other means of proof. *Willoughby*, 742 F.3d at 238; *United States v. Carney*, 387 F.3d 436, 451 (6th Cir. 2004). The Sixth Circuit has noted that "[w]hen jurors hear that a defendant has on earlier occasions committed essentially the same crime as that for which he is on trial, the information unquestionably has a powerful and prejudicial impact." *United States v. Johnson*, 27 F.3d 1186, 1193 (6th Cir.1994). Ultimately, the district court is afforded great discretion in conducting the balancing process, *Id*., and if a court chooses to admit prior bad act evidence, it "may lessen the likelihood that the jury considers Rule 404(b) evidence for an improper purpose by giving the jury a limiting instruction." United States v. Ray, 189 F. App'x 436, 445–46 (6th Cir. 2006) (quoting *United States v. Merriweather*, 78 F.3d 1070, 1077 (6th Cir. 1996) ("The magnitude of that risk might well have been reduced by a clear and concise instruction identifying for the jurors the specific purpose for which the evidence was admissible and limiting their consideration of the evidence to that purpose.").

Sampson avers that, the government has produced evidence of his alleged "knowledge of how to post commercial sex ads and arrange commercial sex dates" because "it has evidence from cellular phones confiscated after [his] arrest." ECF No. 29, PageID.141. Sampson says the Government "has produced several commercial sex ads related to MV-1 and presumably will call the undercover officer who responded to a commercial sex ad of MV-1 at trial." *Id*. The Court is aware that the Government has also produced evidence of Sampson's Facebook communications with MV-1 and victim interviews.

The Government responds, asserting that "this evidence may not alone rebut the suggestion that Sampson did not create or post the sex ads, that Sampson did not communicate with the UC, or that Sampson interacted with MV-1 without intending or knowing that she would engage in commercial sex." ECF No. 35, PageID.210. In its response, the Government does not contest Sampson's argument, that "the government has all the evidence it needs to prove the elements of the charged sex-trafficking offense," ECF No. 29, PageID.141, and it refers to the prior bad act evidence's probative value under the third prong only in relation to its rebuttal case.

Given the myriad of admissible evidence available to the Government to prove its case in chief, and that the Court has reserved ruling on the rebuttal issue until the case in chief has been completed, the Court finds that the probative value of the prior bad act evidence is substantially outweighed by the danger of unfair

prejudice. However, the Government is free to raise the issue again in connection with its request to for rebuttal evidence after the close of any potential defense evidence Sampson will introduce.

For now, Sampson's motion *in limine* [ECF no. 29] is **GRANTED** without prejudice to the Government renewing its request later.

### D. [ECF No. 38] Objection to the Government's Notice of Intent to Use 414 Evidence

The Government's proposed Rule 414 evidence includes evidence from the state criminal case against Sampson. Specifically, the notice refers to a Madison Heights Police report. Though not attached as an exhibit, the Government insists that the report outlines a video found on Sampson's "cellular phone" that allegedly "depitct[ed] . . . minors engaged in sexually explicit conduct, including a video of a minor having sex with a man." ECF No. 38-2, PageID.226. The Government says some of the images recovered from Sampson's phone in that previous case were used in "commercial sex ads." *Id*. It intends to introduce this evidence "through the testimony of Madison Heights Police Detective Bissonett." *Id*.

Sampson objects to the government's June 23, 2023, notice of intent to use rule 414 evidence at trial. ECF No. 38, PageID.221.  He contends that, "[a] review of the evidence from the state case reveals that the minor the government refers to in the video was at least 14 years old when the video was taken, as this was the age at which she met Mr. Sampson" and "[t]here is no indication that the other minors

were under the age of 14 either." ECF No. 38, PageID.222. Because the Government failed to "identify a 'child'", as defined in Rule 414, whom he previously molested, Sampson argues that Rule 414 "does not permit introduction" of the Government's proposed evidence. ECF No. 38, PageID.223.

Sampson also correctly argues that the Government's proposed evidence is unduly prejudicial and is subject to his Rule 404(b) motion [ECF No. 29]. The Madison Heights Police report and the video it references from the Oakland County case is included in the prior bad act evidence the Government seeks to introduce as referenced in section IV. For the reasons stated *infra*, in section IV.C.3, the Court finds that its probative value is substantially outweighed by the danger of unfair prejudice. The police report is therefore inadmissible, and Sampson's objection is **MOOT**.

After close of the Government's case in chief, if Sampson decides to introduce defense evidence and the Government chooses to raise its rebuttal request and seeks admission of the prior bad act evidence, Sampson's objection will not be affected. This is true because the admissibility or exclusion of that evidence—which includes the evidence objected to by Sampson here—stands independently of a determination under Rule 414. In other words, if the Court admits the prior bad act evidence, Rule 414 will not bar the admission of the video or testimony of Detective Bissonett, and

if the Court excludes the prior bad act evidence due to its unduly prejudicial effect, Rule 414 will not permit its admission.

### E. [ECF No. 51] Sampson's Motion *in Limine* to Exclude Expert

On August 18, 2023, the government notified defense counsel of its intent to call FBI Child Forensic Interview Specialist Shannon Martucci as an expert witness at trial. ECF No. 51-2, PageID.283 (Government's Expert Witness Notice). In that notice, the Government anticipates that Ms. Martucci's will testify about several topics:

>   (1) reasons why adolescent victims of sex trafficking and sexual abuse may delay disclosure of such abuse;
>
>   (2) her educational and work background; circumstances surrounding and reasons for victims' delayed reporting of sexual exploitation, including incomplete initial disclosure;
>
>   (3) sex trafficking victims' reluctance to leave their traffickers or report abuse;
>
>   (4) the concepts of trauma and disassociation and how they may affect an adolescent's ability to recall details of sexual exploitation;
>
>   (5) reasons why adolescent sex trafficking victims may lie about their true age;
>
>   (6) the dynamics of the relationship between a sex trafficker and an adolescent victim; and
>
>   (7) the concept of branding.

ECF No. 51-2, PageID.283.

Sampson moves *in limine* to preclude the expert testimony of Martucci. He seeks to exclude her testimony under Fed. R. Evid. 702, or in the alternative, to limit the subject matter she may testify about under Rules 702, 403, and 608. The Court will address each of Sampson's arguments in turn.

### 1. Rule 702

Under Rule 702, "a person with 'specialized knowledge' qualified by his or her 'knowledge, skill, experience, training, or education' may give opinion testimony if it 'will assist the trier of fact to understand the evidence or to determine a fact in issue.' " *United States v. Johnson*, 488 F.3d 690, 698 (6th Cir. 2007) (quoting Fed. R. Evid. 702). "While a proposed expert witness's qualification to testify 'in the form of an opinion . . . is unquestionably a preliminary factual determination for the trial court . . . it is a determination which must be made upon the *evidence* of the witness' qualifications." *Kingsley Assoc. Inc. v. Del–Met, Inc*., 918 F.2d 1277, 1286 (6th Cir.1990) (emphasis added) (internal quotation omitted); See Fed. R. Evid. 104(a); and Fed. R. Evid. 702. The burden on a party proffering expert testimony is to "show by a preponderance of proof that the expert whose testimony is being offered is qualified and will testify to scientific knowledge that will assist the trier of fact in understanding and disposing of relevant issues." *Sigler v. Am. Honda Motor Co*., 532 F.3d 469, 478 (6th Cir. 2008).

Further, an expert witness's testimony must be reliable. *United States v. Rios*, 830 F.3d 403, 413 (6th Cir. 2016). "The task for the district court in deciding whether an expert's opinion is reliable is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to unsupported speculation." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517 (6th Cir. 2008). District courts enjoy broad discretion in determining whether to admit or exclude expert testimony. *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 672 (6th Cir. 2010).[3]

The Court will discussion Ms. Martucci's qualifications, the helpfulness of her testimony to the trier of fact, and its reliability in turn.

## A. Ms. Martucci's Qualifications

Ms. Martucci has a Master of Science in professional counseling and has been certified by the National Board of Certified Counselors for 13 years. ECF No. 59-2, PageID.392. She has been a Child Forensic Interview Specialist with the FBI for more than 10 years and has extensive experience in forensic interviewing. Ms. Martucci has done approximately 2050 forensic interviews and approximately 110 trainings she conducted for FBI agents, local, federal, tribal and international law

---

[3] Defendant cites *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). As the Supreme Court has established, however, the factors listed in *Daubert* do not apply in all cases, and are meant to be helpful guidelines, not a "definitive checklist or test." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150, 119 S. Ct. 1167, 1175, 143 L. Ed. 2d 238 (1999). Here the *Daubert* factors are not helpful.

enforcement. *Id*. Her experience includes interviewing child and adolescent victims and/or witnesses regarding sexual and physical abuse, exploitation, abduction, terrorism and/or witnesses of violent crime. *Id*. Before her time with the FBI, she gained experience as a forensic interviewer conducting interviews of children and adults regarding allegations of abuse for law enforcement agencies. *Id*. at PageID.393. Lastly, Ms. Martucci has twice testified in federal court, giving her expert opinion on matters of sexual abuse, physical abuse, and child sexual exploitation.

Rule 702's requirement that an expert witness' must "establish [her] expertise by reference to skill, experience, training, or education" has "always been treated liberally." Ms. Martucci's experience and training—over a period of years—relates considerably to the proposed topics of her testimony pertaining to victims of sex trafficking. Thus, the Court finds that the Government has demonstrated by a preponderance of the evidence that Ms. Martucci can be qualified as an expert witness in the subject matter pertaining to the relationships and emotional aspects of child sex trafficking victims and their traffickers. *Pride v. BIC Corp*., 218 F.3d 566, 577 (6th Cir. 2000).[4]

---

[4] The Court notes that Sampson does not argue that Ms. Martucci is unqualified, a finding that she is qualified is nonetheless required for admission of her expert testimony.

### B. The Helpfulness of Ms. Martucci's Testimony to the Trier of Fact

Next, the Court must decide whether Ms. Martucci's testimony will be helpful to the trier of fact. On this point, Sampson argues that she should be precluded from testifying about why adolescents may lie about their true age because "the government intends to call the alleged victim to testify in this case, and she has already provided her reasons for lying about her age during recorded interviews." ECF No. 51, PageID.277. Additionally, he asserts that "jurors are routinely entrusted with making credibility determinations, meaning that they are capable of grasping why people may lie and assessing whether the reason for lying was justifiable given the context." *Id*. at PageID.278.

This argument rests on an inaccurate factual premise because it suggests that the members of the jury will all be individuals who have routinely served on jury duty throughout their lives; that is not necessarily true. Further, sex trafficking of a minor is an abnormal act and the dynamics of the victim-trafficker relationship as well the psychologies, and behaviors of victims is unlikely to be common knowledge amongst average jurors.

The Government intends to introduce evidence that MV-1 "was underage and chronically neglected by her parents." ECF No. 52, PageID.291.  Given her alleged housing insecurity and unstable upbringing, MV-1 was allegedly "reliant upon Sampson for food, clothing, and shelter." *Id*.  As such, the Government contends

that she "engaged in a series of behaviors to meet those needs." *Id*. While it may be true that MV-1's testimony will inform the jury as to the specific reasons she allegedly lied about her age, Ms. Martucci's testimony will likely offer a unique perspective on the matter, namely, it will contextualize the jury's understanding of the vulnerabilities MV-1's allegedly experienced as a young woman. It will also contextualize her behaviors, her psychology, and the power dynamics she experienced as a child sex trafficking victim, a perspective unlikely to be thoroughly borne out by MV-1's testimony alone. All the topics of Ms. Martucci's proposed testimony are likely to assist the jury's understanding of the evidence regarding the facts in this case. As such, the Court finds that Ms. Martucci's proposed testimony is relevant and will be helpful to the trier of fact.

On these bases, the Court also rejects one of Sampson's arguments he makes under Fed. R. Evid. 403 in support of the proposition that the probative value of the Martucci's reasons-why-adolescent-victims-lie-about-their-age testimony is substantially outweighed by the danger of needlessly presenting cumulative evidence. ECF No. 51, PageID.278. It is not.

### C. The Reliability of Ms. Martucci's Testimony

The Court must also determine whether Ms. Martucci's testimony is reliable. Sampson avers that it is not reliable because her testimony is speculative, that she has no knowledge of the facts of Mr. Sampson's case, has never spoken with the

alleged victim, and is not testifying based on "scientific knowledge." *Id*. In support of this argument, Sampson relies on *Bixler*, where the Sixth Circuit held that an expert's testimony was reliable because her testimony about general principles of drug dependency in relation to sex trafficking victims "helped the jury contextualize the women's vulnerabilities and understand the power [the defendant] held over them" when those subjects were "likely are beyond an ordinary juror's knowledge or experience." *United States v. Bixler*, No. 21-5194, 2022 WL 247740, at *5 (6th Cir. Jan. 27, 2022). The *Bixler* court reached this conclusion even though the expert (named Clark) did not personally examine the drug addict sex trafficking victims in that case. *Id*.

Sampson believes that *Bixler* is distinguishable from the instant case because, "[w]here the expert in *Bixler* testified to the victims' external symptoms—like nausea, diarrhea, sweating, shaking, and drooling—Ms. Martucci intends to testify about subjective matters such as why adolescent sex trafficking victims lie about their true age, why they delay reporting of sexual exploitation, and the dynamics of relationships between sex traffickers and adolescent victims." ECF No. 51, PageID.276.

But, in *Bixler*, Clark's testimony did involve an element of subjectivity. *Id*. She proffered expert testimony regarding the "psychological impacts of drug dependency", stating specifically that "those [former drug users] struggling with

addiction initially reuse drugs to 'chas[e] feeling good[.]'" *Id*. The Court did not say that this portion of Clark's testimony—pertaining to state of mind of any given drug user during a relapse—was speculative. Instead, the court included it among the expert testimony it described as "helping to contextualize the women's vulnerabilities and understand the power Bixler had over them" as their drug provider and sex trafficker. *Id*.

Sampson also attempts to distinguish *Bixler* by arguing that "[u]nlike the expert in *Bixler*, Ms. Martucci does not intend to testify about verifiable and objective experiences of the alleged victim." ECF No. 51, PageID.276. The court did not describe the means by which Clark verified his conclusion about the state of mind of any given drug user facing relapse, and it did not explain specifically how she arrived at the conclusion that a drug user relapses so that he/she may "chase feeling good", but perhaps those things are verifiable using the same methods as Ms. Martucci, that is, by becoming educated in the harm it causes, undergoing training in counseling, and conducting forensic interviews with victims over a period of 13 years, *inter alia*.

It is well established that district courts have "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable," provided that the gatekeeping mandate of *Daubert v. Merrell Dow Pharms., Inc*., 509 U.S. 579 (1993) is followed "to ensure the reliability and

relevancy of expert testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). As stated *supra*, Ms. Martucci's testimony on all proposed topics is relevant to contextualize MV-1's vulnerabilities, her behaviors, her psychology, and the power dynamics of her and Sampson's alleged minor victim-trafficker relationship.

Further, Sampson's purported distinctions—between objective and subjective methods of verification—are of no consequence because "[a] district court evaluating the reliability of non-scientific expert testimony does not have to focus on whether the expert employed an objective standard or methodology and instead can focus on the reliability of the expert's personal knowledge or experience." *Cook v. Erie Ins. Co*., 478 F. Supp. 3d 658, 666 (S.D. Ohio 2020). And Ms. Martucci's expert testimony, offered for general principles pertaining to the vulnerabilities, behaviors, and psychologies of minor sex trafficking victims, in addition to general principles pertaining to the power dynamics of the minor victim-trafficker relationship, is admissible for a such a generalized purpose under Rule 702. See *Bixler*, 2022 WL 247740, at \*5 (noting that certain expert testimony "does not require review of case-specific facts."); and Fed. R. Evid. 702 advisory committee's notes ("[I]t might ... be important in some cases for an expert to educate the factfinder about general principles, without ever attempting to apply these principles to the specific facts of the case."). Indeed, Sampson cites no authority for the proposition that expert testimony that refers to general principles, rather a case-

specific review of the facts, is unreliable unless it employs or relies on scientific knowledge or methods.

Sampson makes a final push to argue that scientific data and case specific facts must be the basis of an expert opinion. Specifically, he asserts that "Ms. Martucci has not performed tests, submitted any publications to support her findings, or pointed to generally accepted scientific data." ECF No. 51, PageID.276. "Even if her observations are accurate based on her experience," he says, "this Court should follow *Tamraz* and preclude Ms. Martucci from giving her speculative, unverifiable opinion at trial." *Id*.

In *Tamraz v. Lincoln Elec. Co*., the Sixth Circuit held that the expert opinion of welder's neurologist, which found that welding rod products triggered "manganese-induced Parkinsonism" in the welder, was speculative. *Tamraz*, 620 F.3d at 670. Reversing the district court's decision to admit the evidence, it reasoned that the "etiological component of neurologist's opinion," which found "that manganese caused welder's Parkinsonism," was a "mere hypothesis and did not constitute scientific knowledge, and [the] neurologist acknowledged speculative jumps involved in his claim of causation." *Id*. In the Court's view, the expert had opined on etiology, that is, the causation of a disease, based solely of a hypothesis and an analysis of the welder's risk factors, but had not done scientific testing to determine causation. *Id*.

44

*Tamraz* is distinguishable because in it involved a civil lawsuit centering on the medically determined causation of a plaintiff's disease, which necessarily involved a scientific determination using medical testing. The doctor in *Tamraz* also did not purport to give his expert opinion on any generally applicable principles pertaining to the medical causation of Parkinson's in any of its various iterations. By contrast, this criminal action does not involve medical diagnosis or scientific testing. But that factor alone does not render Ms. Martucci's opinion inadmissible. As stated *infra*, an expert's opinion, does not need to be scientific or case specific for a court to determine that it is reliable. *Tamraz* does not control the outcome of Sampson's instant Motion.

The Court is instead persuaded by *United States v. Bell*, No. CR 17-20183, 2022 WL 1014497, at *1 (E.D. Mich. Apr. 5, 2022), where the court found reliable the expert testimonies of: an FBI special agent regarding "the typical human trafficking experiences of victims, and the common behaviors of and different methods of control used by traffickers"; and a forensic interview specialist for the department of homeland security who would testify about "reasons why victims of sex trafficking would or would not disclose ongoing sex trafficking during a forensic interview, the prevalence of delayed outcry/disclosures in sex trafficking investigations, trauma-bonding in cases of sex trafficking, as well as her experience with sex trafficking victim." *Id*. at 1. The court concluded that "[u]nder *Bixler*, the

reliability of this type of testimony is not dependent on [it] having personally examined the victims in this case." *Id*. at *3.

Ms. Martucci's testimony is similar to the expert testimony offered in *Bell*. The reliability of her testimony is not dependent on her having personally examined MV-1 and conducting scientific testing.

Finally, Sampson argues that "depending on what the defense can glean when its non-testifying data expert is able to access to the alleged victim's Cellebrite extraction (cell phone extraction), Ms. Martucci's testimony on the concept of branding may be irrelevant and thus subject to exclusion under Rules 401 and 702." ECF No. 51, PageID.279. The Court notes that, in the time since Sampson filed his Motion, the parties have resolved the issues pertaining to production of the Cellebrite extraction data and he has made no attempt to supplement his Motion by providing a basis for exclusion of the branding testimony under Rules 401 and 702. The Court finds that the branding testimony is relevant because it has a tendency to contextualize the jury's understanding of the tactics of sex traffickers and the impact on minor victims. Indeed, it is alleged that Sampson branded MV-1 by tattooing the word "Queen" on her lower back as a symbol of her sex worker status. That fact and testimony about the impact branding has on victims is of consequence in this action.

On these bases Samson's Motion is **DENIED**.

46

## 2.  Fed. R. Evid. 608

Sampson argues that, "in an effort to anticipatorily rehabilitate her character for truthfulness, the government intends to elicit 'expert' testimony from Ms. Martucci detailing reasons victims may lie about their age. But this is impermissible [under Rule 608]. ECF No. 51, PageID.278.

Under Rule 608(a), "[a] witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character. [But] evidence of truthful character is admissible only after the witness's character for truthfulness has been attacked."

Though Ms. Martucci does not intend to give her expert opinion of MV-1's character for truthfulness, her opinion speaks directly to why individuals facing similar circumstances as MV-1 would lie about their age. Thus, Ms. Martucci will be permitted to testify about the reasons why sex trafficking victims lie about their age only if MV-1's character for truthfulness is attacked.

On this basis Sampson's Motion is **GRANTED**.

## V.    Conclusion

For the reasons set forth above,

1.  ECF No. 27 is **GRANTED;**

2.  ECF No. 28 is **GRANTED IN PART** and **TAKEN UNDER ADVISEMENT IN PART**, as stated *infra*:

    a.  Request no. (3) is **GRANTED**;

    b.  Request no. (5) is **GRANTED**;

    c.  Request no. (6) is **TAKEN UNDER ADVISEMENT**;

    d.  Request no. (10) is **GRANTED**.

3.  ECF No. 29 is **GRANTED;**

4.  ECF No. 51 is **GRANTED IN PART AND DENIED IN PART;**

5.  The Objection is **MOOT**;

**IT IS SO ORDERED**.

Dated:      December 19, 2023

                                   s/Gershwin A. Drain
                                   HON. GERSHWIN A. DRAIN
                                   United States District Court Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
December 19, 2023, by electronic and/or ordinary mail.

/s/ Teresa McGovern
Deputy Clerk