UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

LAVONTE SAMPSON,

    Defendant.
_____/

Case No. 21-CR-20732

U.S. DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

## OPINION AND ORDER DENYING DEFENDANT'S ORAL MOTION FOR RECUSAL OF JUDGE

**I.    Introduction**

Lavonte Sampson ("Defendant" or "Sampson") was indicted on December 7, 2021. He faces charges for Sex Trafficking of Children under 18 U.S.C § 1591(a) ("Count 1") and Production of Child Pornography under 18 U.S.C § 2251(a) ("Count 2"). On the day of trial, January 24, 2024, Sampson made and argued an oral motion for recusal of judge. For the reasons set forth below, Defendant's oral motion is denied.

**II.    Applicable law and Background**

In support of his Motion, Sampson relies on 28 U.S.C § 455(a). Under § 455(a), all "judge[s] of the United States" must "disqualify [themselves] in any

proceeding in which [their] impartiality might reasonably be questioned." 28 U.S.C. § 455(a).

§ 455(b), in contrast to § 455(a)'s general dictate, enumerates specific instances requiring recusal, the first of which is relevant here: judges must recuse themselves when they have "a personal bias or prejudice concerning a party . . ." *Id.* § 455(b)(1). Under § 455, "[r]ecusal is mandated ... only if a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *United States v. Surapaneni*, 14 F. App'x 334, 337 (6th Cir. 2001) (quoting *Easley v. Univ. of Michigan Bd. of Regents*, 853 F.2d 1351, 1356 (6th Cir. 1988)); see also *United States v. Adams*, 722 F.3d 788, 837 (6th Cir. 2013) (quoting *United States v. Dandy*, 998 F.2d 1344, 1349 (6th Cir. 1993)).

As Sampson argues, appearances suggest that this Court has formed an opinion regarding his guilt or innocence of the charges he now faces. At oral argument, Sampson took issue with certain language stated in the Court's January 17, 2024, Opinion and Order Denying Defendant's Motion for *Brady* Material [#70] and Denying Defendant's *Ex Parte* Motion for Rule 17(c) Subpoena [#71] (the "Opinion"). In that Opinion, the Court denied Defendant's requests for the "minor['s] mental health treatment records from therapy, counseling, social service providers, Child Protective Services, Detroit Children's Hospital, and the Michigan Department of Health and Human Services from 2020 onward." ECF No. 84,

2

PageID.1076. The denial also referred to Defendant's requests for a subpoena under Fed. R. Crim. P. 17(c), and his request to have the Court review the records in camera.

With regard to Rule 17(c), the Court concluded that Defendant did not show "with specificity [that] relevant and admissible evidence . . . may be contained in the minor victim's mental health records." *Id*. at PageID.1082. While Defendant's motion professed his belief that the evidence sought would show that the minor suffered from "a conduct disorder which impacted her mental health," the Court concluded that Defendant failed "to make any connection between this disorder and [the] witness credibility." *Id*. at PageID.1083. He also failed to allege a factual basis supporting his argument that the mental health records would contain exculpatory information. The Court further held that Defendant did not demonstrate that he could not "obtain the requested information from other sources, a prerequisite for obtaining a Rule 17(c) subpoena." *Id*.

Notably, Sampson's *Brady* Motion argued that "as the only witness with first-hand knowledge of the events charged in the indictment, the minor's credibility will be paramount to any determination of guilt or innocence." ECF No. 70, PageID.995. And Defendant believed that "whether the minor had been diagnosed with any mental health conditions, whether she was prescribed any medication(s) for those condition(s), and her compliance with any treatment plan [wa]s paramount to a

credibility finding." *Id*. Rejecting this argument, the Court noted that, "Defendant's reliance on the fact [that] the minor victim is the sole person with firsthand knowledge of the alleged events does not carry the day when evidence of his guilt is on video, cell phones, websites, in pictures, and on social media." *Id*. at 1085. This quote, Sampson avers, along with those listed below, suggest that the Court believes that Sampson is guilty.

1. The minor victim's testimony will not be the sole evidence against Defendant. She was wide awake during these crimes. There is additional evidence against Defendant, not just the minor victim's account, including a video of Defendant engaged in sexual intercourse with the minor victim, commercial sex ads posted by Defendant on the internet, Facebook records, photographs, and surveillance video of the minor victim at the motel where Defendant trafficked her, as well as pictures of Defendant in bed with the minor victim at his home.

2. This evidence will be offered in addition to testimony from law enforcement officers who rescued the minor victim and who recovered cellular phones from her and an adult sex worker who conspired with the Defendant to exploit the minor child.

ECF No. 84, PageID.1086.

With these statements—now challenged by Sampson—the Court explained why *United States v. Castillo*, Case No. 16-20344, 2016 WL 4761777 at *1 (E.D. Mich. Sept. 13, 2016), the case Defendant heavily relied upon in support of his request for the minor's records, is distinguishable. As stated in the Opinion, *Castillo* held that, because the victim was the sole witness in that matter, her credibility would've been "paramount to any determination of guilt or innocence" and thus, the

4

psychiatric treatment materials requested there were potentially relevant under *Brady*, which requires the Government to turn over exculpatory materials to defendants. *Id*. at *2. The *Castillo* court relied on specific facts demonstrating the probative value of the records. *Id*.

Unlike *Castillo*, however, here the minor's reliability is not paramount in the determination of guilt or innocence because the Government proffers several avenues of evidence—beyond the minor's testimony— to persuade the jury as to Sampson's alleged guilt. For those reasons, the Court held that "the question of Defendant's guilt or innocence will not turn solely on the minor victim's testimony." ECF No. 84, PageID.1086. The statements Sampson now challenges were made in the Court's Opinion and they explain the rationale for this conclusion. The Court will discuss Sampson's argument below.

### III.  Analysis

Arguing that the Court's statements give the appearance that the Court has "made up its mind" about his guilt, Sampson relies on *United States v. Liggins*. There, the Court held that the district court abused its discretion by denying a defendant's motion for recusal based on trial judge's remarks at a pretrial hearing. *United States v. Liggins*, 76 F.4th 500, 507 (6th Cir. 2023). The Black criminal defendant was being prosecuted for conspiracy to possess with intent to distribute heroin and aiding and abetting possession with intent to distribute heroin. *Id*. The

5

judge stated that defendant "look[ed] like a criminal to me" and was doing "what criminals do." *Id*. The Court held that a reasonable observer could have interpreted the remark to indicate a "prejudgment of guilt" based on the defendant's physical appearance, and the remarks served no purpose for courtroom administration. *Id*. Rather, the statements "constituted gratuitous commentary by the district judge about his opinion of Liggins and his feelings about Liggins' case." *Id*.

In *Liggins*, the district judge was plainly exasperated with the defendant for several reasons. Namely, the defendant was unable to work with his attorney, and he agreed to plead guilty, so the judge canceled the trial, then the defendant changed his mind and elected to proceed to trial. *Id*. Additionally, the case was more than three years old and had been transferred to the Eastern District of Michigan from Kentucky. *Id*. The district judge's remarks in *Liggins* indicated an overt attempt to admonish the defendant for, *inter alia,* giving him the "runaround" and misleading the court. *Id*. at 503. In the Sixth Circuit's view, the judge's comments demonstrated a "deep-seated antagonism" that rendered fair judgement impossible, which warranted recusal. *Id*. at 506-507.

*Liggins* is not at all analogous and it does not support recusal in this case. Here, none of the Court's statements challenged by Defendant—the rationale for certain rulings the Court made—can be interpreted to indicate a prejudgment of guilt. Unlike *Liggins*, the Court's rationale did not express an "opinion of defendant"

6

and the district judge did not indicate that he had any feelings about the defendant. Moreover, the Court's statements and rationale simply refer to the factual allegations and evidence that the Government has relied on repeatedly throughout this case, in the pleadings and at oral argument. The Opinion explains how the Government proffers several avenues of evidence—beyond the minor's testimony—to persuade the jury as to Sampson's alleged guilt. Critically, however, the Court did not weigh the evidence, make credibility determinations, make gratuitous comments, or indicate that it had a "deep seated antagonism" for the Defendant. And the Court's statements do not suggest that it favors the Government or is incapable of rendering fair judgment in this case. Put simply, the Opinion applied the law and each one of the statements Sampson challenges were tailored to the Court's reasoning for distinguishing *Castillo*. Therefore, *Liggins* does not support the argument that the Opinion's statements would cause reasonable observers to question this Court's impartiality.

At oral argument, Defense counsel specifically asserted that the Court's Opinion "stated that 'the adult sex worker who conspired with the defendant to exploit a minor child' will testify." She continued, averring that, "in addition to being suggestive that the Court has made up its mind about my client's guilt, if true, this is news to the defense because Tiffany Perkins has not been listed as a witness and

7

as this Court has repeatedly reminded defense counsel, trial was supposed to start weeks ago."

Defense counsel misread the Court's Opinion, which states that "*testimony from law enforcement officers* who rescued the minor victim and who recovered cellular phones from her and an adult sex worker who conspired with the Defendant to exploit the minor child" will be offered. ECF No. 84, PageID.1086 (emphasis added). Contrary to Defense counsel's assertions, the Opinion does not say that "the adult sex worker who conspired with Defendant to exploit the minor child will testify." The Opinion specifically refers to the potential testimony of "law enforcement officers[,]" including, *inter alia*, Secret Service Forensic Analyst Joshua Seney, who allegedly "conducted the electronic forensic phone extractions, or dumps, of the two cell phones belonging to MV-1 and the adult woman recovered from the MNM motel during the undercover operation on November 30, 2020." ECF No. 61-5, PageID.952.

Defendant also attempts to rely on *Whitman* and the "*Liteky* line of cases" to support his argument. But neither one of them apply favorably with respect to Defendant's position. In *Whitman*, the defendant pled guilty to one count of bank embezzlement. *United States v. Whitman*, 209 F.3d 619, 621 (6th Cir. 2000). The district court denied her a two-level downward adjustment for acceptance of responsibility under the United States Sentencing Guidelines and sentenced her to a

8

thirteen-month term of imprisonment and five years of supervised release. *Id*. Whitman appealed, contending that she should have been granted the downward adjustment and that the district court judge should have recused himself because his comments and demeanor at the sentencing hearing reflected impermissible bias against her and her counsel. *Id*. Vacating the sentencing order of the district court and remanding the case for resentencing before a different judge, the Sixth Circuit noted that, "[b]ecause we are vacating Whitman's sentence due to the ambiguous record below, we need not address her claims of judicial bias." *Id*. at 624. "Nevertheless," the Court stated, "in light of the district judge's intemperate demeanor towards Whitman's counsel, we believe that this case should be assigned to a different judge upon remand." *Id*.

The district judge's "intemperate demeanor" established that the judge "lectured Whitman's counsel at length as to his ethical responsibilities and rebuked him repeatedly for his conduct in th[at] case." *Id*. The judge also implied that the conduct of defense counsel would be held against the defendant. *Id*. Additionally, the Court observed that "despite numerous comments about the 'attitude' of [defense counsel] the record does not reveal any display of impertinence or disrespect to the court on his part." *Id*. at 625. Further, the district judge mentioned his goals of educating the bar and improving the practice of law during proceedings. *Id*. The Sixth Circuit held that the "district judge's lengthy harangue in this case had the

9

unfortunate effect of creating the impression that the impartial administration of the law was not his primary concern[,]" and the Court found it "advisable to assign the [defendant's] resentencing on remand to a different judge." *Id*. The Court emphasized, however, that "there is no evidence that the district judge was actually swayed by bias in this matter." *Id*. at 625-626. And it clarified that the Court was not suggesting "that [the judge] allowed secondary considerations as to his mission to influence his judgment." *Id*.

*Whitman* is distinguishable because, there, the district judge was admonishing defense counsel in way that created the impression that administration of the law was not his primary concern. By contrast, here, the Court merely described—without any degree of partiality—the evidence the Government will rely on to persuade the jury as to Sampson's alleged guilt, a factor that distinguishes this case from *Castillo* and demonstrates that the minor's reliability is not paramount in the jury's determination of guilt or innocence. Unlike the statements in *Whitman*, here, it would be apparent to reasonable observers who read the Court's Opinion that the statements made therein were motivated entirely by the impartial administration of justice.¹ Thus, the Opinion would not cause a reasonable observer to question this

---

¹ At oral argument, Defendant raised hypothetical concerns, stating that "What if a juror has access to Pacer and looks at the docket and reads the Court discussing all the evidence of Sampson's guilt, which is 'on video, cell phones, websites, in pictures, and on social media'?" Jurors are typically instructed not to research the case or discuss it with anyone. The Court concludes, however, that no reasonable

Court's impartiality. This was not true for the judge's statements in *Whitman* and that case is therefore inapplicable here.

Likewise, Sampson's reliance on the *Liteky* line of cases offers no support for his recusal argument. In *Liteky*, the Supreme Court noted that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994) (internal citation omitted). That is because, "[i]n and of themselves (i.e., apart from surrounding comments or accompanying opinion), [judicial rulings] cannot possibly show reliance upon an extrajudicial source[,] [which can typically be demonstrative of bias or prejudice]; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . when no extrajudicial source is involved. *Id*. Along these lines, the Court stated that "[a]lmost invariably, [judicial rulings] are proper grounds for appeal, not for recusal." *Id*. But "[a] favorable or unfavorable predisposition [of a judge] can ... be characterized as 'bias' or 'prejudice'" when, "even though it springs from the facts adduced or the events occurring at trial, it is so extreme as to display clear inability to render fair judgment." *Id*. Thus, the Supreme Court held, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of ... current ... or ... prior proceedings, do not constitute a basis for bias or [prejudice] unless they

---

observer would have grounds to question the Court's impartiality based on a reading of the Opinion because the statements merely refer to the Government's purpose for offering certain evidence, that is, to persuade the jury as to Sampson's alleged guilt.

11

display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id*.

Citing *Liteky*, a court in this district rejected certain arguments, raised by the defendant in *United States v. Andrews*, that were materially similar to Sampson's argument. In *Andrews*, the defendant argued that the court order pertaining to his motion to suppress contained several findings and conclusions related to his traffic stop and arrest which "provide[d] proof that the issues in dispute ha[d] already been prejudged." *United States v. Andrews*, No. 1:22-CR-20114-2, 2023 WL 7323202, at *4 (E.D. Mich. Nov. 7, 2023) (Ludington, J.).

The judge's first conclusion stated that, "[a]t 10:45 PM, Michigan State Police (MSP) Trooper Cody Siterlet conducted a traffic stop after he observed the Equinox commit traffic violations, which were captured on his dashcam video." *Id*. Defendant argued that the court's language credited Trooper Siterlet's direct testimony as true and that his testimony was a "ploy" to expand the timeline of the Trooper's pre-stop activities because the defendant believed that the stop had actually occurred earlier in the evening. *Id*. Rejecting this argument, the court noted that such a finding was supported by the police report and, even if the stop "had occurred at some time other than 10:45 p.m.," the court's reference to the police report "hardly rises to the level of 'deep-seated . . . antagonism that would make fair judgment impossible.'" *Id*. (quoting *Liteky*, 510 U.S. at 555).

12

Second, the court's order in *Andrews* directed the parties to submit supplemental briefing because, "at the evidentiary hearing, Defendant argued [that] even though the officers *did* observe the alleged traffic violations, these violations were 'de minimis' and cannot support probable cause." *Id*. at *5. (emphasis in original). Defendant argued that this language was proof of prejudgment. *Id*. "It is not" the court held, "the language cited above reflected this Court's understanding of one of Defendant's arguments . . . at the . . . evidentiary hearing—it does not, as Defendant appears to believe, 'presume [] the traffic stop to have been legal'" and it "did not show" deep seated antagonism or inability to render fair judgment. *Id*.

Lastly, the court's order stated that "Trooper Siterlet ... removed Defendant from the car, placed him in handcuffs, and escorted him to a nearby tree for a protective frisk." *Id*. Defendant argued that the finding warrants recusal because the Incident Report and Trooper Siterlet's testimony at the evidentiary hearing "affirm that Siterlet arrested Defendant, not 'removed' him from the car." *Id*. "Defendant is mistaken and this argument is misplaced" the court stated, "the above-cited language . . . was not suggesting that Defendant was not arrested" and the order containing the statements at issue went on "to discuss the circumstances of Defendant's arrest and indictment." *Id*. The court held that "this statement is not of the kind which would warrant the undersigned's recusal from pretrial proceedings." *Id*. (citing *Liteky*, 510

13

U.S. at 555, and *Liggins*, 76 F.4th at 506–07).[2] *Andrews* applied *Liteky* and concluded that the statements at issue showed the court's understanding of: (1) the events described in the police report, (2) the defendant's argument, and (3) as to one of the court's statements, defendant's interpretation was plainly "mistaken and misplaced." *Id*.

*Andrews* is analogous because, here, none of the Court's statements impress upon reasonable observers the appearance of deep-seated antagonism against the Defendant, favoritism for the Government, or the inability of the undersigned to render fair and impartial judgment. Rather, the Opinion and statements contained therein simply reflect the Court's understanding of the evidence the Government will offer, its purposes for doing so, and the degree of importance the minor's reliability carries in relation to other evidence pertaining to Sampson's alleged culpability. In these circumstances, the statements Sampson challenges do not show that the undersigned has a deep-seated antagonism against him or that the Court has favoritism for the Government. The statements do not show that the Court is incapable of rendering fair judgment and they do not give the impression of bias,

---

[2] There is a fourth statement contained in the *Andrews* court's order. Like all the other statements at issue there, the court concluded that it did not show prejudgment of the merits or warrant recusal. Because it is repetitive, the Court elected not to include it here.

14

prejudice, or partiality. Accordingly, *Liteky* fails to offer any support for Sampson's recusal argument and Sampson's motion for recusal is without merit.

I.   Conclusion

Defendant's Motion for recusal is **DENIED**.

**SO ORDERED.**

Dated:  January 25, 2024                              /s/Gershwin A. Drain
                                                                       GERSHWIN A. DRAIN
                                                                       United States District Judge


CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
January 25, 2024, by electronic and/or ordinary mail.
s/ Lisa Bartlett
Deputy Clerk