UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

LAVONTE SAMPSON,

    Defendant.
_____/

Case No. 21-CR-20732

U.S. DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

## OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR DECLARATION OF MISTRIAL [ECF No. 93]

**I.**     **Introduction**

Lavonte Sampson ("Defendant" or "Sampson") was indicted on December 7, 2021. He faces charges for Sex Trafficking of Children under 18 U.S.C § 1591(a) ("Count 1") and Production of Child Pornography under 18 U.S.C § 2251(a) ("Count 2"). Trial began on January 24, 2024.

On January 29, 2024, Sampson filed a Motion for "A Mistrial Due to Highly Prejudicial Outburst of Government's Witness That was of such a Nature so as to Render the Transcriptions of Testimony Inaccurate." ECF No. 93, PageID.1178. The Government responded on the same day [ECF No. 95]. Upon review of the briefing and applicable authority, the Court concludes that oral argument will not

aid in the resolution of this matter. Accordingly, the Court will resolve the Motion [ECF No. 28] on the briefs. See E.D. Mich. L.R. 7.1(f)(2).

On January 30, 2024, before the closing arguments commenced, and before the jury began deliberations—which ultimately resulted in a guilty verdict—the Court indicated to the parties on the record that it had reviewed the briefing and would deny Defendant's Motion for Declaration of a Mistrial in opinion. This Opinion and Order follows.

## II. Background

On January 25, 2024, the minor involved in this case, Savannah C., testified. During cross examination, Savannah made unsolicited statements that can be properly classified as an emotional "outburst." It involved Savannah yelling and cursing while on the witness stand. The exchange is encapsulated in the trial transcript as follows,

> Q. And you recognized other pictures that were taken by other people; isn't that correct?
>
> A. Not other people. I know who took the pictures.
>
> Q. Okay.
>
> A. I mean, do I look –
>
> Q. You testified –
>
> A. May I ask you a question? Do I look like a dummy?
>
> Q. No, Savannah.

A. Do I look like a dummy to you?

Q. No, I don't think you're dumb at all.

A. I was there, right? He was there right?

Q. Savannah?

A. No. It's my story. I can tell my story how I want to.

Q. And I just asked you the questions about your story.

A. How about I don't answer no questions at all.

THE COURT: Savannah?
THE WITNESS: No. Because this -- no. This is bullshit.

MS. BRUNSON: Your Honor, can we take a break?

THE WITNESS: She's trying to fuckin' grill me. I'm not stupid.

MS. BRAZILE: No, you're not.

THE WITNESS: You is. You're asking me about questions about somebody else. This ain't about nobody else. It involves Lavonte, sweetheart. It involves Lavonte. He's sitting right here in my face, whether you fuckin' like it or not.

No. No.

THE COURT: Okay. We're going take a break.

MS. BRUNSON: Thank you.

THE WITNESS: I'm done. I want to go. I'm done. Fuck this case. Fuck all y'all at this point.

THE COURT: Let's take a break. Let's take 10 and continue after that.

3

[1/25/24 Tr. Trans., Pg. 82-84].

On January 26, 2024, Sampson made an oral motion for a mistrial. He argued that Savannah called him a "nigger" and that the transcript was inaccurate because it did not capture her use of the word. The Court denied the oral motion without prejudice. The Court noted that it did not hear the "n-word" being said, but a member of its staff did. And government counsel did not hear the word being said either. (1/26/24 Trial Tr. at 5-6.). However, defense counsel and their staff members indicated that they heard the racial epithet being said. After reiterating that it was seeking a mistrial, the defense requested a curative instruction, and the Court gave the instruction to the jury. Defense counsel subsequently requested that the jurors be polled individually, and the Court agreed to do so.

When the end of the day came, the Court proceeded to poll each juror individually, calling them in the courtroom one by one without other jurors being present. It asked them broad questions about what they heard Savannah say during her outburst, what was the worst thing they heard her say, and whether they could remain fair and impartial. In the end, four of the jurors indicated that they heard Savannah call Sampson the "n-word" and ten of them did not indicate that they heard her use the word. All the jurors indicated that they could remain impartial, and they all agreed not to discuss the outburst or the Court's line of questioning about it with

4

other jurors. One of the jurors indicated that she "could try" to remain impartial. However, that juror was ultimately excused before deliberations began.

Sampson filed a written Motion for mistrial on January 29, 2024. In his Motion, Sampson maintains that Savannah "accused a defense attorney of engaging in improper conduct before losing her composure, at which point she called Lavonte Sampson a 'nigga' on the stand before launching into an expletive-laden outburst that ended when she got off from the witness stand shouting obscenities and continued shouting as she walked down the hallway." ECF No. 93, PageID.1178. Defendant avers that "[t]he record does not reflect the use of the n-word or the continued outburst in the hallway[,]" and "these inaccuracies raise legitimate questions as to what else was not accurately captured in the record." *Id*.

Based on the foregoing reasons, Sampson requests that the Court grant his motion for mistrial under Federal Rule of Criminal Procedure 26.3. The Court will address each of Sampson's arguments and the applicable law below.

### III. Applicable Law and Analysis

In considering whether improper witness statements warrant granting a mistrial, the Sixth Circuit considers five factors: "(1) whether the remark was unsolicited; (2) whether the government's line of questioning was reasonable; (3) whether a limiting instruction was immediate, clear, and forceful; (4) whether any bad faith was evidenced by the government; and (5) whether the remark was only a

small part of the evidence against the defendant." *United States v. Caver*, 470 F.3d 220, 243 (6th Cir. 2006); see also *United States v. Stapleton*, 297 F. App'x 413, 422 (6th Cir. 2008).

"Fairness to the accused is the primary concern in ruling upon a mistrial motion." *U.S. v. Carpenter*, No. CRIM. 12-20218, 2013 WL 6631139, at *3 (E.D. Mich. Dec. 17, 2013) (citing *United States v. Atisha*, 804 F.2d 920, 925–26 (6th Cir.1986)). "The denial of a mistrial is generally within the discretion of the trial court." *United States v. Moore*, 917 F.2d 215, 220 (6th Cir. 1990).

As the Government points out, in applying the above referenced factors, Savannah's comments do not warrant a mistrial. With respect to factors one, two and four, her unsolicited comments were made during Defendant's cross-examination and the Government did not engage in an unreasonable line of questioning that is indicative of bad faith.

On the third factor, the Court gave a curative instruction immediately upon request by Defendant. The instruction was clear, forceful, and the jurors collectively agreed to abide by the instruction when it was given. Further, the Court polled the jurors individually without the other jurors being present in the courtroom. It asked each juror what they heard Savannah say during her outburst, what was the worst thing they heard her say, it asked each of the jurors if they could remain fair and impartial, and it instructed each juror not to discuss the outburst or the court's line

of questioning about it with the other jurors. Only four of the fourteen jurors heard the racial epithet, and all of them, except one, indicated—without hesitation—that they could remain fair and impartial. The Court excused the only juror who expressed hesitation when asked if she could remain impartial. As the Government notes, the juror's answers to the Court's questions demonstrated that they all heard Savannah comments as part of her heightened emotional reaction to cross-examination.

Regarding the fifth factor, Savannah made her comments near the tail-end of her testimony on January 25, 2024, during an isolated fit of exasperation. The outburst was a minor part of her testimony in comparison to her remarks about all the various interactions between her and Sampson. Further, the Government proffered other evidence, including testimony regarding the alleged undercover operation at the MNM Motel, the commercial sex ads, the sex video, and Facebook messages between Sampson and Savannah. The depth of the evidence demonstrates that Savannah's outburst was only a minor part of the evidence offered at trial.

Lastly, despite the outburst, each member of the jury who would deliberate guaranteed that he/she could remain fair and impartial. Thus, Sampson right to a fair trial is not impeded. See *United States v. Stapleton*, 297 F. App'x 413, 422 (6th Cir. 2008) ("Juries are presumed to understand and follow . . . directions from the court."); See also *id*. (no mistrial warranted where government witness testified that

his co-conspirator should have just pleaded guilty, the government's line of questioning was reasonable, the remark was isolated, and the court gave a curative instruction.) (citing cases); see also *United States v. Pluviose*, 274 F. App'x 766, 767 (11th Cir. 2008) ("[T]he voicing of potentially prejudicial remarks by a witness is common, and any prejudice is generally cured efficiently by cautionary instructions from the bench") (internal quotations and citation omitted).

Sampson also raises concerns about the accuracy of the trial transcripts, which could affect his right to appeal. He attributes these concerns to his belief that the January 25, 2024, transcript did not capture all the language Savannah used during her outburst on that day. This rare breakdown in the transcription process resulted from a unique emotional outburst that interfered with the transcription during an isolated incident at trial. No further outbursts have taken place and there is no reason to believe that any of the transcripts written during other times at trial are inaccurate. With respect to the January 25, 2024, transcript, the Court polled the jury to determine whether the disputed remark was made by Savannah. And the results of that polling are captured on the record. Defendant does not point to any additional inaccuracies in the transcript. Thus, the rare breakdown in the transcription process that occurred on January 25, 2024, does not deprive Sampson of his right to appeal.

Sampson's written Motion also proposes two additional bases for declaration of a mistrial that were not raised in his oral motion: (1) he argues that the

Government failed to correct false testimony Savannah gave during cross examination about her not having internet access at the MNM Motel; and (2) during a sidebar concerning Savannah's testimony, which suggested Mr. Sampson did not provide her with tampons while she was pregnant, the government stated "we know that she blames [Mr. Sampson] for her miscarriage." ECF No. 93, PageID.1182-1183. Defendant says that the Government's statement "raise[s] legitimate concerns that evidence going to Savannah's credibility was not disclosed[,] in violation of *Giglio*." *Id*.

With respect to Defendant's first argument, the applicable law can be stated as follows. "The knowing use of false or perjured testimony constitutes a denial of due process if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir.1998) (internal quotation marks omitted). To succeed on such a claim, a defendant "must show: (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false." *Id*. (internal quotation marks omitted).

To show falsity, the defendant must demonstrate that the testimony was "actually perjured"; "mere inconsistencies" are not sufficient to establish knowing use of false testimony. *Id*. (internal quotation marks omitted); see also *Akrawi v. Booker*, 572 F.3d 252, 265 (6th Cir. 2009) ("The subject statement must be 'indisputably false' rather than 'merely misleading.'" (quoting *Abdus–Samad v. Bell*,

9

420 F.3d 614, 626 (6th Cir.2005))). In turn, "[a] false statement is material ... and '[a] new trial is required if the false testimony could[,] in any reasonable likelihood[,] have affected the judgment of the jury." *Brooks v. Tennessee*, 626 F.3d 878, 893 (6th Cir. 2010) (quoting *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972)).

Though Defendant alleges factual details to demonstrate that the Government knew about the alleged false statement, he fails to explain how Savannah having internet access at the MNM Motel could have any reasonable likelihood of affecting the jury verdict. Without Sampson advancing any argument on this factor, the Court fails to understand how Savannah's alleged internet access at the MNM Motel makes it more or less probable that Sampson committed either of the two crimes charged.

Savannah's internet access at the MNM Motel does not make it more or less probable that Sampson recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, or solicited her while knowing or recklessly disregarding the fact that she was a minor and would be caused to engage in a commercial sex act. Further, her internet access does not make it more or less probable that he had a reasonable opportunity to view her or that the alleged offense affected interstate commerce. See 18 U.S.C 1591(a)(1). And the alleged false statement also has no likelihood of affecting the jury verdict on Sampson's

10

Production of Child Pornography charge under 18 U.S.C § 2251(a). For these, reasons, the Court finds that Savannah's alleged false statement was not material.

Defendant's second argument suggests that a mistrial is warranted because the Government knew that Savannah "blames Mr. Sampson for her miscarriage" but failed to disclose it. Pursuant to *Brady*, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of good faith or bad faith of the prosecution." *Brady v. Maryland,* 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). Likewise, "*Brady* also applies to the failure to disclose evidence affecting the credibility of a witness whose 'reliability ... may ... be determinative of guilt or innocence.'" *United States v. Garner*, 507 F.3d 399, 405 (6th Cir. 2007) (quoting *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972)).

Defendant's argument fails because, again, he does not explain how the alleged fact that Savannah blamed him for her miscarriage would affect the outcome in this case. See *United States v. Blood*, 435 F.3d 612, 627 (6th Cir.2006) (a "delay in disclosure may violate *Brady* when the delay itself causes prejudice"); and *Garner*, 507 F.3d at 405 ("If previously undisclosed evidence is disclosed during trial, no *Brady* violation occurs 'unless the defendant has been prejudiced by the delay in disclosure.'"). Defendant says nothing about prejudice or how that prejudice took its form at trial. Instead, he states that, "these statements are also concerning

11

given the government's insistence that Mr. Sampson was engaged in a fishing expedition when he sought evidence related to Savannah's credibility by way of her diagnoses, medications, and mental health conditions." ECF No. 93, PageID.1183. Defendant's argument does not demonstrate that he was prejudiced by the Government's alleged failure to disclose, and it does not show that a mistrial is warranted.

Finally, Defendant asserts that, "after polling the jurors on January 26, the Court reversed course from its previous position that Savannah's credibility was of no moment due to the evidence it discussed of Mr. Sampson's guilt in its Opinion and Order denying Mr. Sampson's Rule 16 Motion and his request for a Rule 17 Subpoena." ECF No. 93, PageID.1181. Defendant misread the Court's opinion. The Court has never said that Savannah's credibility was "of no moment" or that her credibility was irrelevant due to the other avenues of evidence the Government proffers with respect to Sampson's alleged guilt. Rather, the Court said, "'the question of Defendant's guilt or innocence will not turn solely on the minor victim's testimony.'" ECF No. 91, PageID.1151 (quoting ECF No. 84, PageID.1086). The difference between these two statements establishes that, while the Court does not believe Savannah's credibility alone would determine the outcome, it recognizes that her credibility is an important issue in the case.

12

Sampson fails to show that a mistrial is warranted or that his right to a fair trial has been impeded.

## I. Conclusion

Defendant's Motion for Mistrial is **DENIED**.

**SO ORDERED.**

Dated: January 31, 2024 /s/Gershwin A. Drain
GERSHWIN A. DRAIN
United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
January 31, 2024, by electronic and/or ordinary mail.
s/ Lisa Bartlett
Deputy Clerk